IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOBBY MITCHELL | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-08-CV-1993-D |
| | § | |
| CATHY S. PAVELKA | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant Cathy S. Pavelka has filed a motion for summary judgment in this *pro se* prisoner

civil rights action brought under 42 U.S.C. § 1983.  For the reasons stated herein, the motion should

be granted.

I.

On or about September 24, 2008, Plaintiff Bobby Mitchell was booked into the Dallas

County Jail on unspecified criminal charges. (*See* Def. MSJ App. at 156).  The same day, plaintiff

was seen by a member of the jail medical staff, who performed a Central Intake Health Assessment.

(*Id.* at 003-05, 156).  Plaintiff reported that he suffered from bipolar disorder and high blood

pressure, was HIV positive, and had a history of substance abuse. (*Id.* at 003).  Although plaintiff

told the medical staff he had been taking a variety of HIV medications, including Truvada, Norvir,

and Reyataz, he did not provide any prescriptions, pill bottles, or medical records identifying those

medications or the prescribed dosages. (*Id.* at 005, 156-57).  As a result, no HIV medications were

prescribed for plaintiff at intake. (*Id.* at 156-57).  Instead, the jail medical staff requested copies of

plaintiff's medical records from his former physician, Dr. Michael Brucki, at the Jaimeson Clinic in

Tyler, Texas. (*Id.* at 007, 158).  When the Jaimeson Clinic failed to respond to the request by October 20, 2008, the jail medical staff requested the records again. (*Id.* at 19, 159-60).  The second request was forwarded by the Jaimeson Clinic to Community Clinic of Northeast Texas and, on or about November 18, 2008, plaintiff's HIV medication list was finally received by the jail. (*Id.* at 161).  Thereafter, plaintiff was prescribed Truvada, Norvir, and Reyataz. (*Id.* at 022-25, 110, 161-62).  Plaintiff remained on those medications until he was transferred to the Hutchins State Jail on January 30, 2009. (*Id.* at 162).

On November 7, 2008, before plaintiff received any of his medications, he filed this action against Dr. Cathy Pavelka, a jail physician assigned to the HIV clinic.  In his complaint and interrogatory answers, plaintiff accuses defendant of deliberate indifference to his serious medical needs by failing to timely request his medical records from Dr. Brucki and by refusing to prescribe any HIV medications for more than two months.  Plaintiff further alleges that defendant failed to prescribe a special diet for his high blood pressure.  The case is before the court on defendant's motion for summary judgment.  As grounds for her motion, defendant contends that there is no evidence of deliberate indifference and that the claims against her are barred by the doctrine of qualified immunity.[1]  Plaintiff was ordered to file a written response to the motion, but failed to do so.  The court therefore decides the motion without a response.

II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v.*

---

[1] Defendant also moves for summary judgment with respect to a perceived state law negligence claim on the ground that plaintiff has failed to adduce any expert testimony establishing negligence and proximate cause. However, the court does not read plaintiff's complaint to allege a negligence claim under Texas law. Even if such a claim was presented, the court would decline to exercise supplemental jurisdiction over the state law claim in view of the dismissal of plaintiff's federal civil rights claim. *See Smith v. Sherman*, No. 3-06-CV-0941-BD, 2007 WL 2757811 at *3 (N.D. Tex. Sept. 21, 2007) (declining to exercise supplemental jurisdiction over plaintiff's state law medical negligence claim after federal civil rights claim was dismissed on summary judgment).

*Catrett*, 477 U .S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment who does not have the burden of proof at trial bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). This may be done by "pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Id., quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.), *cert. denied*, 113 S.Ct. 98 (1992). Once the movant meets this burden, the nonmovant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir), *cert. denied*, 113 S.Ct. 82 (1992). The verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings comport with the requirements of Fed. R. Civ. P. 56(e).[2] *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). All evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

A.

The due process clause of the Fourteenth Amendment to the United States Constitution requires the state to provide for the "basic human needs" of pretrial detainees. *See Hare v. City of Corinth*, 74 F.3d 633, 639-40 (5th Cir. 1996) (citing cases). This includes the right to adequate medical care. *Id.* In order to establish a constitutional violation, a detainee must show that the

---

[2] Rule 56(e) provides, in relevant part:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.

FED. R. CIV. P. 56(e)(1).

defendant acted with deliberate indifference to his medical needs. *Id.* at 647-48. This, in turn, requires proof that the defendant was subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk. *Id.* at 648, *citing Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 1984, 128 L.Ed.2d 811 (1994). Deliberate indifference is an extremely high standard to meet. *See Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A pretrial detainee must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). In addition, delay in providing medical care does not rise to the level of a constitutional violation unless the delay results in substantial harm. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

B.

Plaintiff has not responded to the motion for summary judgment.[3] Although this failure does not permit the entry of a "default" summary judgment, the court is permitted to accept defendant's evidence as undisputed except as controverted by plaintiff's verified complaint and sworn interrogatory answers. *See Freeman v. Bowles*, No. 3-01-CV-1871-BD, 2002 WL 1359717 at *2 (N.D. Tex. Jun. 18, 2002), *citing Bookman v. Shubzda*, 945 F.Supp. 999, 1002 (N.D. Tex. 1996).

The summary judgment evidence, which consists largely of plaintiff's medical records from the Dallas County Jail and the affidavit of defendant, shows that plaintiff received extensive medical care while incarcerated. At book-in on September 24, 2008, plaintiff was evaluated by a physician and a nurse. (*See* Def. MSJ App. at 003-05, 156). Although he reported being HIV positive,

---

[3] It appears that plaintiff is no longer incarcerated in the Hutchins State Jail and has not provided the court or opposing counsel with his new address. (*See* Docs. #25, 26, 27, 28).

plaintiff did not produce any medical records or pharmacy records, pill bottles, prescriptions, or other documentation of his medication or dosages. (*Id.* at 156-57). Had the jail medical staff been furnished with such information, a doctor would have continued plaintiff on his HIV medications. (*Id.* at 157). Instead, in accordance with established jail policy, the medical staff requested plaintiff's records from his prior physician. (*Id.* at 157-58). That was done on September 30, 2008--six days after plaintiff arrived at the jail. (*Id.* at 158).

Plaintiff's first encounter with defendant was on September 30, 2008, during his initial visit to the Dallas County Jail HIV Clinic. (*Id.*). At that time, defendant took a comprehensive medical history, performed a complete physical exam, ordered standard HIV laboratory tests, and increased the dosage of plaintiff's blood pressure medication. (*Id.* at 158-59; *see also id.* at 007-10). Believing that plaintiff already was on a "renal diet," which is low in sodium, defendant did not change his diet. (*Id.* at 159). Plaintiff told defendant that he had been prescribed certain medications as part of a "highly active antiretroviral therapy" ("HAART") regimen, but had not been taking any prophylaxis antibiotics. (*Id.* at 157-58). In her affidavit, defendant explains why she did not immediately continue plaintiff on his self-reported HIV medications:

> Highly active antiretroviral therapy ('HAART') is not a 'one-size-fits-all' treatment. The medications and dosages are customized to each patient's needs. This is accomplished through a specific set of lab tests to determine the medication resistance of the patient's particular HIV strain. Doing this 'from scratch' would entail referring the jail inmate to the DCHD Amelia Court clinic for genotype studies. That process would ideally take about four to six weeks. Knowing the patient's resistance to HIV medications allows the healthcare provider to avoid medications to which the patient's virus is resistant and to tailor the dosages. Accordingly, when we are presented with a new patient who gives a history of being on a HAART protocol pre-incarceration, the jail physicians' options are either to start 'from scratch' with viral resistance studies to determine appropriate medications and dosages, or to verify the protocol already designed and shown to be effective for that patient. That second option,

> verifying the HAART 'cocktail' that has already proven therapeutic
> for the patient, is much preferable.   In addition, it is a more
> reasonable utilization of healthcare resources.  Reflecting this, the
> policy of Dallas County Jail Health was and is not to write orders for
> resumption of HIV medications until we can obtain this verification
> from the inmate's previous HIV health care provider.  That is what we
> undertook to do in Mr. Mitchell's case.

(*Id.* at 157-58).

On October 20, 2008, defendant reviewed plaintiff's chart in preparation for his follow-up appointment the next week.  (*Id.* at 159).  Upon discovering that the jail had not yet received plaintiff's medical records, defendant obtained another medical authorization from plaintiff and requested the records again.  (*Id.* at 159-60).  At plaintiff's follow-up appointment on October 29, 2008, defendant reviewed the results of his HIV lab tests and told plaintiff that she would write orders for HIV medications once they were verified by his former physician.  (*Id.* at 160).  Another appointment was scheduled for November 18, 2008.  (*Id.* at 161).  By the time of that appointment, the jail had finally received an HIV medication list from the Community Health Clinic of Northeast Texas.  (*Id.*).  Defendant immediately restarted plaintiff on his prescribed medications, including Truvada, Norvir, and Reyataz, and plaintiff remained on those HIV meds for the remainder of his stay at the Dallas County Jail.  (*Id.* at 161-62; *see also id.* at 022-25, 110).

In contrast to this specific evidence, plaintiff generally alleges in his verified complaint that he was denied necessary medical treatment by defendant "after being consciously made aware of the effects and dangers of canceling my HIV medication by myself and medical facts[.]"  (*See* Plf. Compl. at 4).  Plaintiff also accuses defendant of failing to request his medical records in a timely manner.  (*See* Mag. J. Interrog. #3).  However, those unsubstantiated allegations are not supported by the record, which shows that the jail medical staff promptly requested plaintiff's medical records from his prior physician and explains why defendant could not prescribe HIV medications pending

the receipt of those records.  The evidence before the court does not come close to establishing deliberate indifference on the part of defendant.  Similarly, plaintiff has failed to create a genuine issue of material fact for trial with respect to his diet.  Although plaintiff was not placed on a "renal diet" at Central Intake, as stated by defendant in her affidavit, (*see* Def. MSJ App. at 009), a special diet was ordered on October 23, 2008.  (*See id.* at 15).  There is no evidence to suggest that this four-week delay harmed plaintiff in any way.

C.

Defendant also seeks summary judgment on her qualified immunity defense.  Jail officials are immune from suit for discretionary acts performed in good faith while acting within the scope of their authority unless their conduct violates a "clearly established . . . constitutional right [ ] of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  Since plaintiff has not proved a constitutional violation, this terminates the qualified immunity analysis.  *See Freeman*, 2002 WL 1359717 at *3 (declining to address issue of qualified immunity where plaintiff failed to establish underlying constitutional violation).

**RECOMMENDATION**

Defendant's motion for summary judgment [Doc. #19] should be granted.  Plaintiff's claims against defendant should be dismissed with prejudice.

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party may file written objections to the recommendation within 10 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon

grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:  April 16, 2009.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE